IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Shuge Lei, | ) | Civil Action No.:    3:22-cv-03971-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| Emres II South Carolina LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Shuge Lei brings the following Complaint against Defendant Emres II South Carolina LLC, by and through counsel, and states and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for injunctive relief, damages, and further equitable relief to redress and prevent violation of Ms. Lei's rights pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHA"), and the South Carolina Fair Housing Law, S.C. Code Ann. § 31-21-10 *et seq.* (hereinafter "SCFHL").

2.      Ms. Lei seeks injunctive relief requiring Defendant to correct its violations of Ms. Lei's rights and prohibiting Defendant from engaging in similar misconduct in the future, monetary relief as compensation for Defendant's violations of her rights under the FHA and SCFHL, and reasonable attorneys' fees and court costs pursuant to 42 U.S.C. § 3613(c)(2) and S.C. Code Ann. § 31-21-140(B).

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction to hear and decide Ms. Lei's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a)(1)(A), as these claims arise under the Constitution, laws, or treaties of the United States.

4.     This Court has supplemental jurisdiction to hear and decide Ms. Lei's state law claims pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same set of operative facts giving rise to the federal claims for relief, over which this Court is vested with original jurisdiction.

5.     Venue for this action is proper in the United States District Court for the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b), because the claims arose and the Defendant resides in this division and district.

## PARTIES

6.     Plaintiff Shuge Lei is a citizen of China and is a Computer Science and Engineering doctoral candidate at the University of South Carolina.  She currently resides in Columbia, South Carolina.

7.     Ms. Lei has been diagnosed with a mental health disorder which is disabling insofar as it significantly limits at least one daily life activity.  As such, Ms. Lei is "disabled" or "handicapped" as defined by the FHA and SCFHL.  *See* 42 U.S.C. § 3602(h)(1); S.C. Code Ann. § 31-21-30(7)(a).

8.     Due to her status as a disabled person alleging injuries as a result of discriminatory housing practices, Ms. Lei is an "aggrieved person" with standing to bring the present action. *See* 42 U.S.C. § 3602(i); S.C. Code Ann. § 31-21-140(A).

9.      Defendant Emres II South Carolina LLC is a Delaware Corporation with a principal place of business in South Carolina.  It is in good standing with the Secretary of State and its registered agent is CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

10.      Defendant owns, manages, and/or controls a student housing complex called "The Rowan" located at 1051 Southern Drive, Columbia, South Carolina 29201.

11.      The Rowan is a provider of a "dwelling" within the meaning of the FHA and SCFHL.  *See* 42 U.S.C. § 3602(b) and S.C. Code Ann. § 31-21-30(5).

12.      At all relevant times described herein, Defendant and/or its agents, employees, and/or other designees acted in such ways so as to deprive Ms. Lei of her federal and state rights and to commit the tortious and other actionable conduct described below.

## **OPERATIVE FACTS**

13.      The Rowan advertises on the home page of its website that "we're pet friendly, so your four-legged friends are welcome to live the good life, too.  There's no better time to experience what student housing in Columbia is supposed to be like!"  *See* the following screenshot taken from https://rowanapartments.com/ (last accessed on 2022.11.08).



14.    The Rowan's Facebook post from July 19, 2022 similarly advertises "All Pets welcome here!" *See* the following screenshot taken from https://www.facebook.com/RowanApartments/ (last accessed on 2022.11.08).



**Connect with The Rowan on Facebook**

15.    Relying on The Rowan's reputation for pet friendliness, Ms. Lei completed an "Application for Residency" at the Rowan on or about June 28, 2022.  She noted her international student status and major on her application, in addition to other personal background information about herself.  No portion of the Application for Residency asked whether Ms. Lei had a pet or emotional support animal.  However, one question asked Ms. Lei, "[w]ould you be willing to live with a pet or service/support animal?"  Ms. Lei answered this question in the affirmative. *See* 2022.06.28 Application for Residency, attached hereto as **Exhibit 1**, at *2.

16.    On or about the same date, after completing the Application for Residency, Ms. Lei entered into a Residential Lease Contract with Defendant to lease one of the private rooms in an apartment at the Rowan.  *See* 2022.06.28 Lease Contract, attached hereto as **Exhibit 2**, at *1.  The Lease Term is from August 14, 2022 to July 23, 2023.  *Id.*

17.    Section 15 of the Residential Lease Contract is called "Animals" and states as follows:

> No animals are permitted without the prior written consent of Owner. Any such consent may be revoked at any time, with or without cause, by giving 10 days written notice to Residents. Except to the extent written permission is given, animals may not be brought upon the Leased Premises, whether such animals belong to Residents or to any other person. The presence of any animals as to which written permission has not been given and is not currently in force, even if such animals are "just visiting," shall be deemed a material and incurable breach of this Agreement and shall be cause for the service of a notice terminating the tenancy. **Service animals or companion animals are not subject to these provisions. However, Owner may require a written statement from a qualified professional verifying the need for the service or companion animal.**

*See id.* at *7, § 15 (emphasis added).

18.    The emphasized sentences above—which were drafted by The Rowan—state in plain terms that service animals or companion animals are not subject to the provisions of Section 15 of the Residential Lease Contract.  However, the Rowan may require a statement verifying the need for a service or companion animal.

19.    The Residential Lease Contract was signed by both Ms. Lei and Rebekah Aunko of The Rowan on June 28, 2022.  *Id.* at *12.

20.    A two-page "Animal Addendum" to the Residential Lease Contract provides that there is no animal rent fee, animal deposit fee, or additional animal-related fees as part of Ms. Lei's Residential Lease Contract.  *Id.* at *14, §§ 2–4.

21.    Section 25.4 of the Residential Lease Contract is called "Fair Housing."  In this Section, Defendant agreed to "comply with all applicable local, state, and federal non-discrimination and fair housing laws, including laws which prohibit discrimination on the basis of race, religion, ethnic origin, national origin, color, sex, age, physical or mental disability, or family status."  *Id.* at *10, § 25.4.

22.    The Residential Lease Agreement contains an "Entire Agreement" clause which states that "[t]his Agreement, including all applicable exhibits, schedules, addenda, or forms,

6

sets forth all of the promises, agreements, conditions, and understandings between Owner and Residents and may not be changed or modified except by an agreement in writing signed by all parties." *Id.* at *10, § 15.

23.     After entering into this agreement, but before the start of the lease term, Ms. Lei consulted with Shatoni Hill, LPC, who determined that Ms. Lei met all of the elements for a diagnosis of a mental health disorder as defined in the Diagnostic Statistical Manual, Fifth Edition.  Pursuant to this diagnosis, Ms. Lei's psychological condition is disabling insofar as it significantly limits at least one daily life activity.  Ms. Lei's condition can affect her ability to cope and maintain her psychological stability.

24.     Based on these determinations, Shatoni Hill recommended that Ms. Lei obtain an emotional support animal as a reasonable accommodation to alleviate the symptoms and effects of her disability, to address her psychological adjustment, and support her functional living activities to ameliorate the severity of her symptoms in housing.  Specifically, she determined that Ms. Lei's poodle, "Dobby," is an appropriate emotional support animal to accomplish these objectives.

25.     Ms. Lei moved into her apartment on August 14, 2022 and brought Dobby to live with her and provide emotional support.

26.     On September 21, 2022, Defendant, through its agents at The Rowan, became aware that Dobby was living with Ms. Lei.  Ms. Lei immediately notified The Rowan that Dobby was an emotional support animal and that she had a written statement from a qualified professional verifying the need for the companion animal.

27.     Despite Ms. Lei's oral representations and offer to provide a written statement from a qualified professional verifying the need for Dobby, Defendant instantly assessed Ms.

Lei with several fees on September 21, 2022: (1) a $300 "Pet Fee – 1 Dog" charge; (2) a $25 "Lease Violation – Dog Off Leash 1st Offense" charge; and (3) a $25 "Lease Violation – Animal Excrement" charge.

28.    Then, on October 6, 2022, Defendant charged Ms. Lei a $100 late fee stemming from her refusal to pay the various pet fees described above even though there was no valid contractual or other legal basis for assessing these fees.

29.    On October 11, 2022, Ms. Lei provided Defendant's representatives at The Rowan a written statement from a qualified professional verifying the need for Dobby as an emotional support animal.

30.    Ms. Lei has repeatedly requested that these fees be removed from her account but Defendant, through its agents and representatives at The Rowan, has refused to do so.

31.    Despite the unlawful assessment of these aforementioned pet fees, Ms. Lei has continued to pay her normal rent of $584 on time each month.

32.    On October 26, 2022, Rachelle D. Leak, the Assistant General Manager/Bookkeeper at The Rowan, sent Ms. Lei a letter on bright yellow paper titled "RISK OF EVICTION" in bold block letters stating that her refusal to pay the fees posted to her account will result in eviction. *See* 2022.10.26 Risk of Eviction Letter, attached hereto as **Exhibit 3**.

33.    Despite Ms. Lei's attempts to resolve the pet fee issue amicably with Defendant's agents and representatives, Defendant has refused to do so and now has threatened to evict her from her dwelling. Thus, Defendant has forced Ms. Lei to file this lawsuit to not only protect her rights under federal and state laws, but also to prevent her from losing her home as a result of Defendant's discrimination and retaliation related to her disability.

34.     As a result of Defendant's violations of the FHA and the SCFHL, Ms. Lei has suffered severe emotional distress, anxiety, mental anguish, nervousness, depression, loss of enjoyment of life, embarrassment, damage to reputation, exacerbation of her preexisting psychiatric condition, and other economic and noneconomic harm.

## FIRST CAUSE OF ACTION
**(Refusal to Grant Reasonable Accommodations in Violation of the Federal Fair Housing Act—42 U.S.C. § 3604(f)(3)(B))**

35.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

36.     By refusing Ms. Lei's requests to remove the various pet-related fees from her account at The Rowan, Defendant has refused to accommodate Ms. Lei's disability.  Defendant has refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiff the equal opportunity to use and enjoy her dwelling.

37.     Ms. Lei has suffered damages as a result of Defendant's violations of 42 U.S.C. § 3604(f)(3)(B), and is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

38.     Defendant's actions were intentional, willful, and/or taken in reckless disregard for the rights of others.

## SECOND CAUSE OF ACTION
**(Refusal to Grant Reasonable Accommodations in Violation of South Carolina Fair Housing Law—S.C. Code Ann. §§ 31-21-40(6)–(7))**

39.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

40.     By refusing Ms. Lei's requests to remove the various pet-related fees from her account at The Rowan, Defendant has refused to accommodate Ms. Lei's disability.  Defendant

has refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiff the equal opportunity to use and enjoy her dwelling.

41.     Ms. Lei has suffered damages as a result of Defendant's violations of S.C. Code Ann. §§ 31-21-40(6)–(7), and is an "aggrieved person" pursuant to S.C. Code Ann. § 31-21-140(A).

42.     Defendant's actions were intentional, willful, and/or taken in reckless disregard for the rights of others.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of Federal Fair Housing Act—42 U.S.C. § 3617)

43.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

44.     By charging Ms. Lei fees for her support animal, Defendant has coerced, intimidated, threatened, and interfered with Ms. Lei in and on account of her exercise and enjoyment of the rights granted to her by the federal FHA.

45.     Ms. Lei has suffered damages as a result of Defendant's violations of 42 U.S.C. § 3617, and is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

46.     Defendant's actions were intentional, willful, and/or taken in reckless disregard for the rights of others.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of South Carolina Fair Housing Law—S.C. Code Ann. § 31-21-80)

47.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

48.     By charging Ms. Lei fees for her support animal, Defendant has coerced, intimidated, threatened, and interfered with Ms. Lei in and on account of her exercise and enjoyment of the rights granted to her by the SCFHL.

49.     Ms. Lei has suffered damages as a result of Defendant's violations of S.C. Code Ann. § 31-21-80, and is an "aggrieved person" pursuant to S.C. Code Ann. § 31-21-140(A).

50.     Defendant's actions were intentional, willful, and/or taken in reckless disregard for the rights of others.

### FIFTH CAUSE OF ACTION
**(Preliminary Injunction—42 U.S.C. § 3613(c)(1) and S.C. Code Ann. § 31-21-140(B))**

51.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

52.     Based on Defendant's discriminatory conduct described above, Defendant has already and will likely continue to seek payment of unlawful fees assessed against Ms. Lei despite her documented need for an emotional support animal as a reasonable accommodation for her qualified disability.  Based on Defendant's conduct, Ms. Lei has reason to believe that Defendant will continue to assess additional charges as a discriminatory practice in violation of the FHA and SCFHL.

53.     Defendant has also threatened Ms. Lei with eviction for exercising her protected civil rights.  *See* 2022.10.26 Risk of Eviction Letter, attached hereto as **Exhibit 3**.

54.     To safeguard Ms. Lei's civil rights and the use and enjoyment of her dwelling, a preliminary injunction is warranted and requested.

55.     A preliminary injunction is expressly authorized by statute for violation of federal and state fair housing laws.  *See* 42 U.S.C. § 3613(c)(1) and S.C. Code Ann. § 31-21-140(B).

56.     There is a likelihood of irreparable harm to Ms. Lei if a preliminary injunction is denied, as the Defendant will continue its attempts to collect and charge the discriminatory pet fees and may start eviction proceedings at any moment.

57.     There is no measurable harm to the Defendant if a preliminary injunction is granted in this case as the discriminatory pet fees—which were illegal *ab initio*—will be negated. Additionally, should this preliminary injunction be granted, Ms. Lei will remain a tenant and still pay monthly rent to Defendant's benefit.

58.     There is a strong likelihood that Ms. Lei will succeed on the merits given the evidence presented demonstrating Defendant's discriminatory conduct outlined above.

59.     The public interest favors granting a preliminary injunction to prevent retaliatory and discriminatory actions taken against residents in housing with disabilities.

## SIXTH CAUSE OF ACTION
### (Permanent Injunction—42 U.S.C. § 3613(c)(1) and S.C. Code Ann. § 31-21-140(B))

60.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

61.     Based on Defendant's discriminatory conduct described above, Defendant has already and will likely continue to seek payment of unlawful fees assessed against Ms. Lei despite her documented need for an emotional support animal as a reasonable accommodation for her qualified disability.  Based on Defendant's conduct, Ms. Lei has reason to believe that Defendant will continue to assess additional charges as a discriminatory practice in violation of the FHA and SCFHL.

62.     Defendant has also threatened Ms. Lei with eviction for exercising her protected civil rights.  *See* 2022.10.26 Risk of Eviction Letter, attached hereto as **Exhibit 3**.

63.    To safeguard Ms. Lei's civil rights and the use and enjoyment of her dwelling, a permanent injunction is warranted and requested.

64.    A permanent injunction is expressly authorized by statute for violation of federal and state fair housing laws.  *See* 42 U.S.C. § 3613(c)(1) and S.C. Code Ann. § 31-21-140(B).

65.    There is a likelihood of irreparable harm to Ms. Lei if a permanent injunction is denied, as Defendant will continue its attempts to collect the discriminatory pet fees and may start eviction proceedings at any moment.

66.    There is no measurable harm to the Defendant if a permanent injunction is granted in this case as the discriminatory pet fees—which were illegal *ab initio*—will be negated.

67.    The remedies available at law are inadequate as Defendant has demonstrated a pattern and practice of assessing fees in retaliation to Ms. Lei's request for a reasonable accommodation based on a qualified disability and because Defendant may continue to engage in conduct in violation of federal and state housing laws, including initiating eviction proceedings.

68.    The public interest favors granting a permanent injunction to prevent retaliatory and discriminatory actions taken against residents in housing with disabilities.

### SEVENTH CAUSE OF ACTION
**(Breach of Contract)**

69.    Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

70.    Ms. Lei and Defendant entered into the Residential Lease Contract as described above.

71.     In consideration for providing a dwelling to Ms. Lei, Ms. Lei agreed to pay a monthly rent to Defendant as outlined in the Residential Lease Contract. *See* 2022.06.28 Lease Contract, attached hereto as **Exhibit 2**, at *1.

72.     As detailed above, Section 15 of the Residential Lease Contract is called "Animals" but states that "[s]ervice animals or companion animals are not subject to these provisions. However, Owner may require a written statement from a qualified professional verifying the need for the service or companion animal." *See id.* at *7, § 15.

73.     Even though Defendant expressly agreed that service animals or companion animals are not subject to the provisions of Section 15 of the Residential Lease Contract, the Rowan has breached the Residential Lease Contract by assessing fines and threatening to evict Ms. Lei for having a qualified companion animal.

74.     Additionally, a two-page "Animal Addendum" to the Residential Lease Contract provides that there is no animal rent fee, animal deposit fee, or additional animal-related fees as part of Ms. Lei's Residential Lease Contract. *Id.* at *14, §§ 2–4.

75.     Even though Defendant expressly agreed not to charge Ms. Lei any fees related to having an animal—let alone a qualified companion animal—Defendant has breached the Residential Lease Contract by charging the fees as described above.

76.     Section 25.4 of the Residential Lease Contract is called "Fair Housing." In this Section, Defendant agreed to "comply with all applicable local, state, and federal non-discrimination and fair housing laws, including laws which prohibit discrimination on the basis of race, religion, ethnic origin, national origin, color, sex, age, physical or mental disability, or family status." *Id.* at *10, § 25.4.

77.     Despite agreeing to adhere to the laws described above, Defendant has breached the Residential Lease Agreement by failing to comply with federal and state fair housing laws and conducting intentional discrimination on the basis of disability.

78.     Defendant has breached the Residential Lease Contract in several particulars, as described above, causing damages to Ms. Lei.

### EIGHTH CAUSE OF ACTION
**(Violation of the South Carolina Unfair Trade Practices Act—S.C. Code Ann. § 39-5-20)**

79.     Ms. Lei re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs and further alleges as follows:

80.     The South Carolina Unfair Trade Practices Act ("SCUTPA") declares unlawful any unfair acts or practices in the conduct of trade or commerce. *See* S.C. Code Ann. § 39-5-20(a).

81.     An act is "unfair" when it is offensive to public policy, or when it is immoral, unethical, or oppressive.

82.     In addition to the actions described above, Defendant's unfair and deceptive method and trade practice of agreeing to not charge pet fees to Ms. Lei but then charging her pet fees after she signed the Residential Lease Agreement and after she put Defendant on notice of her qualified disability violated the SCUTPA.

83.     Defendant's discriminatory and retaliatory conduct affected Ms. Lei's contract for the rental of a dwelling, which was offensive to Ms. Lei and to activities affecting trade and commerce in the State of South Carolina.

84.     Defendant's actions were immoral, unethical, and oppressive within the meaning of the SCUTPA, causing damages to Ms. Lei.

## PRAYER FOR RELIEF

85.     WHEREFORE, Ms. Lei prays for entry of judgment against Defendant by finding that Defendant violated the FHA and SCFHL, retaliated against Ms. Lei, breached the Residential Lease Contract, and engaged in unfair and deceptive trade practices.

86.     Ms. Lei seeks a temporary and permanent injunction to enjoin all of Defendant's unlawful practices complained about herein and impose affirmative injunctive relief requiring Defendant, its partners, agents, employees, assignees, successors, and all persons acting in concert or participating with it, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to handicap or disability.

87.     Ms. Lei seeks an award of compensatory damages to her in an amount to be determined by the Court that would fully compensate her for the economic loss, humiliation, embarrassment, and emotional distress that has been caused by the conduct of the Defendant alleged herein.

88.     Ms. Lei seeks punitive damages in an amount to be determined by the Court that would punish Defendant for its willful, wanton, reckless, and intentional conduct alleged herein and that would effectively deter similar conduct in the future.

89.     Ms. Lei seeks an award of treble damages pursuant to S.C. Code § 39-5-140.

90.     Ms. Lei seeks an award of pre-judgment interest and post-judgment interest as provided by law.

91.      Ms. Lei seeks an award for the costs of the suit herein incurred, including reasonable attorneys' fees and costs authorized pursuant to 42 U.S.C. § 3613(c)(2) and S.C. Code Ann. § 31-21-140(B).

92.    Ms. Lei seeks an award for all such other and further relief as the Court may deem just and equitable.

*<<Signature Page Below>>*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/Scott D. MacLatchie
    Scott D. MacLatchie
    Federal Bar No. 13028
    E-Mail: scott.maclatchie@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
    (803) 799-2000

*Attorney for Plaintiff Shuge Lei*

Columbia, South Carolina

November 9, 2022